UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS S. ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV985 CDP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Thomas Ross's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Claimant Ross brings this action asserting that he is disabled because he suffers from attention deficit/hyperactivity disorder and borderline intellectual functioning. The Administrative Law Judge concluded that Ross is not disabled. Ross appeals the decision denying him benefits. Because I conclude that the ALJ's decision is supported by substantial evidence, I will affirm the decision.

## Procedural History

On November 17, 2005, Thomas Ross filed the current application for a Period of Disability and Disability Insurance Benefits. Ross filed for Supplemental Security Income payments on November 22, 2005. The Social Security Administration denied Ross's application at the initial level and a timely hearing request was filed. Ross appeared and testified at a hearing held on April 27, 2007. The ALJ issued an opinion on October 18, 2007 upholding the denial of benefits. On May 27, 2008, the Appeals Council of the Social Security Administration denied Ross's request for review. The ALJ's determination thus stands as the final determination of the Commissioner. Ross filed this appeal pro se on July 3, 2008.

## Testimony Before the ALJ

Ross testified that he lives on his own in a house owned by his parents. At the time of the hearing, Ross was working 20 to 25 hours a week as a convenience store clerk, a position he had held for approximately six months. Ross testified that his job is not particularly difficult for him to do, although he has trouble staying focused on the tasks that are assigned to him. Ross stated that he believes the job at the convenience store could lead to full-time employment, and he stated that he believes he could handle full-time work without any problem. Ross owns a

car that he uses to drive himself to work.  He also helps his mother with her work once a week stocking merchandise at a greeting cards store.

Ross stated that he has completed twelve years of education.  He attended an elementary school from kindergarten through fifth grades, and then was home schooled through twelfth grade.  Ross stated that he has no difficulty writing, although money and financial situations cause him some difficulty.  He maintains one credit card that he uses.  Ross's parents manage his bank accounts and utility bills.

Ross listed a number of jobs he had held in the last few years before working at the convenience store.  Ross stated that he had been fired from some of those jobs, usually for being late to work.  Ross stated that his biggest challenge in his current job is staying focused, and during "down time" he often has to be reminded of things he should be doing.  Ross said he did not think he needed a supervisor to tell him what to do all the time, but that "it sometimes would probably be good to have one."

Ross did not list any specific physical limitations in his testimony.  He stated that he has no difficulty performing mechanical tasks with his hands, has on occasion lifted weights, has bench pressed approximately 150 pounds and bicep curled approximately 20 pounds.  Ross testified that he sees a general practitioner approximately every six months or when he needs his prescription for Strattera

refilled.  Ross stated that he is not under the care of any psychiatrist or psychologist.

Ross's mother, Belinda Ross, also testified at the hearing.  According to Mrs. Ross, she and her husband took control of Ross's finances after he incurred significant overdraft fees with his checking account and maxed out one of his credit cards.  He also incurred excessive charges for a cell phone that was registered in his name.  Mrs. Ross testified that she constantly reminds Ross to take his daily medication.  She also takes care of his laundry because he "doesn't do his laundry very well."

Mrs. Ross testified that her son's biggest problems with work relate to his poor time management.  Ross frequently needs to be reminded about the tasks he has to complete, and he forgets how to plan ahead so that he can get himself to work on time and do the jobs that are assigned to him.  Mrs. Ross testified that her son had a job coach helping him with his current job at the convenience store, but that more recently he's been left to do the job on his own.

The ALJ heard further testimony from Dr. James Reid, a medical expert.  Dr. Reid analyzed Ross's medical records and IQ test results, and concluded that Ross has a learning disability.  According to Dr. Reid, Ross is borderline intellectual functioning, and is distractable, impulsive and irresponsible with money.  Dr. Reid stated that Ross has limitations in terms of distractability and

attention. However Dr. Reid testified that he does not believe Ross's attention deficit hyperactive disorder poses a significant limitation to Ross beyond his learning disability.

Finally, the ALJ heard testimony from a vocational expert, John McGowan. McGowan testified that, having reviewed Ross's work history, Ross had experience in a number of simple, repetitive jobs that he had done successfully. McGowan could not say definitively that Ross had the ability to complete a normal workday without interruption and perform at a constant pace. McGowan did testify that jobs such as those Ross had experience doing existed in significant numbers in the national economy.

## Medical Records

The record does not show that Ross suffers from any significant physical limitation or disability. Rather, Ross seeks social security benefits based on mental limitations.

Jennifer Boyer Stevens, Psy. D., performed a psychological evaluation of Ross in September 2004. According to Dr. Stevens, Ross was fully oriented. His intellectual functioning was estimated to fall within the below average range, and he had difficulty with concentration and mental control. Dr. Stevens stated that Ross's attention span "may be within normal limits." Dr. Stevens administered the Minnesota Multiphasic Personality Inventory (MMPI). According to Dr. Stevens,

Ross's responses indicated "dishonesty and defensiveness." Ross was also administered the Wechsler Adult Intelligence Scale-III (WAIS-III). According to this test, Ross had a verbal IQ of 83, a performance IQ of 68, and a full scale IQ of 74. Ross was diagnosed with anxiety disorder, not otherwise specified (with distractability and poor concentration); rule/out ADD, inattentive type; borderline intellectual functioning; and personality disorder, not otherwise specified. Ross's Global Assessment of Functioning (GAF) Score was assessed at 65, indicating an individual with mild symptoms, but generally functioning pretty well.

Dr. Jimmy Bell, a family practitioner, treated Ross and noted in a report that Ross had been diagnosed with ADHD. Dr. Bell stated in a report that Ross was "markedly limited" in a number of areas of work-related mental functioning.

Thomas Spencer, Psy. D., performed an additional psychological evaluation of Ross in June 2007, following Ross's social security hearing. Dr. Spencer administered a second WISC-III exam. Ross had a verbal IQ of 81, a performance IQ of 73, and a full scale score of 75. His full sale IQ score placed him in the borderline to below average of intellectual functioning. Ross was also given the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). Dr. Spencer questioned the validity of the MMPI-2 test results, because he believed that Ross may have indiscriminately responded "true" to the majority of items. Ross was diagnosed with attention deficit/hyperactivity disorder, predominantly inattentive

type; rule/out alcohol abuse versus dependence; and borderline intellectual functioning. On the GAF scale, Ross was assessed at 55-60. A GAF rating of 51-60 indicates an individual with moderate difficulty in social, occupational, or school functioning.

Medical records also showed that Ross had been taking the prescription drug Strattera-80 milligrams since May 2005. According to a nurse practitioner treating Ross, Ross stated that he was doing better since starting the medication. The nurse practitioner stated that Ross appeared more alert, had better eye contact, and reduced "wandering of ideas."

Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is

substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§

404.1505(a) and 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R.§§ 404.1520 and 416.920.

When evaluating evidence of subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id*. at 1322.

## The ALJ's Findings

The ALJ found that Ross does not suffer from a disability within the meaning of the Social Security Act at any time through the date of the decision. He issued the following specific findings:

1. Ross meets the insured status requirements of the Social Security Act through June 30, 2006.

2. Ross has engaged in substantial gainful activity after his alleged onset date of September 1, 2004 (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. Ross has the following severe impairments: attention deficit/hyperactivity disorder and borderline intellectual functioning (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. Ross does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. Ross has the residual functional capacity to perform work at all levels of physical exertion. He has no severe physical impairment. He has nonexertional limitations associated with mental impairments, however. Due to symptoms associated with his mental impairments, Ross would be limited to work involving simple, repetitive tasks. He would be moderately limited in his ability to perform complex, detailed work activity where he would need to maintain concentration for extended periods. He would also be moderately limited in his ability to complete a normal workday or workweek without interruptions from psychological based symptoms and in his ability to perform at a consistent pace without an unreasonable number and length of rest periods.

6. Ross is able to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. Ross was born on July 6, 1984 and was 20 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 C.F.R. §§ 404.1563 and 416.963).

8. Ross has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568 and 416.968).

10. Considering Ross's age, education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that Ross can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. Ross has not been under a "disability," as defined in the Social Security Act, from September 1, 2004 through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The ALJ concluded that the medically determinable impairments discussed in Ross's medical history could reasonably be expected to produce the alleged symptoms, but that Ross's statements concerning the intensity, duration and limiting effects of these symptoms were not fully credible. The ALJ noted that Ross engages in a relatively wide range of activities on a regular basis, suggesting that he would be capable of performing a variety of work-related tasks. Evidence showed that Ross lives alone and has primary responsibility for his own care and for cooking, cleaning and other household tasks. Given the evidence presented at the hearing as to Ross's activities and work history, the ALJ concluded that Ross's allegations of symptoms precluding all substantial gainful activity were not credible.

## Discussion

When reviewing a denial of Social Security benefits, a court cannot reverse an ALJ's decision simply because the court may have reached a different outcome, or because substantial evidence might support a different outcome. *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003); *Woolf v. Shalala*, 3 F.3d

1210, 1213 (8th Cir. 1993). Rather, the court's task is a narrow one: to determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g); *Estes v. Barnhart*, 275 F.3d 7722, 724 (8th Cir. 2002). The answer to that question in this case is yes.

The record in this case shows that the ALJ carefully considered Ross's medical history and the testimony at Ross's administrative hearing. The ALJ considered Ross's work history and concluded that Ross has engaged in substantial gainful activity in the past, and continues to be able to perform his past relevant work. This conclusion is supported by evidence that Ross has a lengthy work history and continues to work as a convenience store clerk. Ross's mental impairments, while they make his work more difficult, do not prevent him from engaging in substantial gainful activity. The ALJ also properly considered testimony from a vocational expert, who testified that jobs exist in significant numbers in the national economy that Ross can perform despite his nonexertional limitations. *See Sanders v. Sullivan*, 983 F.2d 822, 823 (8th Cir. 1992) (vocational expert testimony required when claimant suffers from nonexertional impairments that significantly affect residual functional capacity).

Ross's argument that his combination of impairments meets the requirements for Medical Listing 12.05C is not persuasive. The ALJ properly considered this argument, and concluded that Ross suffers from borderline

intellectual functioning that does not rise to the level of mental retardation. That is, while Ross may have below average mental functioning that moderately limits his ability to concentrate or perform complex tasks, he does not have "significantly subaverage" intellectual functioning, with "deficits in adaptive functioning." This conclusion is supported by substantial evidence from two psychiatrists who independently diagnosed Ross with borderline intellectual functioning. Additionally, Ross was shown to have GAF scores in the range of 65 to 55. These scores indicate an individual with mild symptoms or an individual with moderate difficulty. The ALJ had substantial evidence from which to conclude that the requirements for Medical Listing 12.05C were not met.

Ross's remaining arguments are similarly unpersuasive. The ALJ was within his discretion to discount the opinion of Ross's family practitioner, Dr. Bell, because Dr. Bell did not adequately define what he meant by "marked" limitations in several areas. Dr. Bell is not a mental health care specialist, and his evidence was inconsistent with that of the examining psychiatrists and the record as a whole. *See Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (A treating physician's opinion can be discounted where other medical assessments "are supported by better or more thorough medical evidence."). Additionally, the ALJ was not bound by the state circuit court decision declaring Ross incapacitated and totally disabled. *See* 20 C.F.R. § 404.1504; *Cruze v. Chater*, 85 F.3d 1320, 1325

(8th Cir. 1996). Finally, the ALJ properly considered evidence from Ross's employer and former employers who submitted statements stating that Ross frequently requires a high degree of supervision when performing tasks. The ALJ was within his discretion to conclude that this evidence, when considered with Ross's testimony, the medical evidence, and the record as a whole, did not establish that Ross was unable to perform his past relevant work.

For these reasons, the ALJ's determination that Ross suffers no disability is supported by substantial evidence in the record as a whole. The decision should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2009.